THE NATIONAL STATE BANK OF BURLINGTON v. MORSE, WIL-
SON & CO. ET AL.

1. **Chattel Mortgage:** DELIVERY AND ACCEPTANCE: WHAT IS NOT:
PRIOR ATTACHMENT. B. & Son, merchants, were insolvent, and were
indebted to various parties, including several personal friends. To these
they issued chattel mortgages on their stock, and had them filed for
record, all without the knowledge of the mortgagees. They also exe-
cuted new notes for their indebtedness to the mortgagees, extending the
time of payment for one year, and it was these notes which the mort-
gages secured. Afterwards they informed the mortgagees that they had
executed and filed the mortgages for their security, and they said that it
was all right, or words to that effect, but they did not then know that
new notes had been made extending the time of payment. Before they
were informed of this fact, plaintiff caused an attachment to be levied
on the stock. *Held* that, as the mortgagees did not, prior to the levy of
the attachment, know all the material facts about the mortgages and the
notes secured thereby, they could not have consented to the transaction,
and hence the mortgages could not, in law, be regarded as delivered and
accepted, and that the attachment was the prior lien on the goods.

*Appeal from Des Moines Circuit Court.*

WEDNESDAY, OCTOBER 26.

THE plaintiff is a creditor of the defendants C. F. Boesch
& Son. As such, it caused a writ of attachment to be levied
upon a stock of goods belonging to Boesch & Son. This
action is brought to obtain a decree establishing the lien of
the attachment as paramount to certain chattel mortgages
executed by Boesch & Son to certain persons made defend-
ants hereto. There was a decree for the plaintiff. The
defendant mortgagees appeal.

*John C. Power, Newman & Blake, Geo. H. Lane, C.
Marble, T. B. Snyder, John Greiner, H. F. Rohde, Thos.
Hedge* and *Theodore Guelich,* for appellants.

*Hall & Huston* and *P. Henry Smyth & Son,* for
appellee.

ADAMS, CH. J. — The defendants Boesch & Son were doing
business as merchants in the city of Burlington. They

had become largely indebted to the plaintiff and to a considerable number of personal friends for money borrowed to enable them to carry on their business. They had also become indebted to various persons for goods purchased. About the 15th of May, 1885, they decided to execute chattel mortgages upon their stock to their personal friends. In this they were actuated in part, no doubt, by motives of friendship, but in part also, we think, by the hope of being able to hinder and delay the plaintiff and their commercial creditors. Mortgages were accordingly drawn and filed for record. The next day the plaintiff caused a writ of attachment to be levied upon the stock. Several of the commercial creditors also brought actions and levied upon the stock. It is contended by the plaintiff and the commercial creditors who acquired liens that no one of the chattel mortgages was delivered until after the other liens had attached. The fact is that, while the mortgages were executed and filed for record before any of the other liens attached, the mortgagees had no knowledge at that time of the execution and filing of the mortgages, nor does it appear that they were executed and filed in accordance with a previous agreement. The delivery, then, did not take place until the mortgagees had knowledge of the execution of the mortgages and signified their acceptance thereof. On this point the evidence shows clearly enough that some of the mortgagees, before any attachment was levied, were informed by the mortgagors of the execution and filing of the mortgages, and that they replied that that was all right, or used words to that effect. This, it may be conceded, was sufficient to show acceptance, but for one fact, which remains to be stated. The mortgages were not executed to secure the indebtedness as it stood, all of which had matured; but new notes were drawn, to run for a year, and the mortgages purported to secure those notes. The notes, however, thus drawn, were not delivered, nor were the mortgagees informed of the fact that they differed from the old notes in that by their terms an extension of time was provided for. This provision was a

material one. The makers of the notes were insolvent, and the security offered consisted of nothing but mortgages upon stock of goods, which would depreciate, if not sold; and no provision was made for a sale unless the mortgagors should attempt to dispose of the goods or remove them out of the county. It is doubtful, to say the least, whether the mortgagees would have accepted the security if they had been informed of the provision for an extension. But it is not important to inquire as to what they would have done. It is enough to know that the transaction involved a material provision of which they were not informed. The minds of the parties did not meet. No person can be said to agree to that of which he is ignorant. It is true that these creditors have now accepted the security, notwithstanding the extension involved. But circumstances have changed. Attachments have been levied, and they are glad to accept what they can get.

The important fact is that we cannot find what in law amounts to an acceptance prior to the attachments. There are no preponderating equities in favor of either party. It is a mere question of legal right. The mortgagees contend that, inasmuch as the mortgages have been now accepted, the lien of the mortgages attached from the date of filing, and it is to be considered paramount to all attachments which have been made since filing. But in our opinion the lien of the mortgages cannot be held to have attached until there was a delivery, and that did not take place until there was an acceptance. *Day v. Griffith*, 15 Iowa, 104; *Cobb v. Chase*, 54 Id., 253.

We think the decree must be                    AFFIRMED.