ALEXANDER v. REDMOND et al.

(Circuit Court of Appeals, Second Circuit. June 30, 1910. Memorandum on Mandate. July 26, 1910.)

No. 262.

1. APPEAL AND ERROR (§§ 1000, 1009*)—EQUITY—DISPOSITION OF CAUSE.
    On an equity appeal, the facts as well as the law are open for consideration, regardless of whether there has been a jury trial, and the issues must be disposed of on the record.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3925–3927, 3970–3979; Dec. Dig. §§ 1000, 1009.*]

2. APPEAL AND ERROR (§ 1175*)—RESERVATION OF MOTION TO REOPEN CASE.
    A reservation of a motion to reopen a case does not extend to the circuit court of appeals. Appeal in equity brings the cause up for final disposition.
    [Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1175.*]

3. BANKRUPTCY (§ 303*)—PREFERENCES—AGENCY—EVIDENCE—SUFFICIENCY.
    Evidence in a suit to set aside an assignment of accounts as a preference in bankruptcy held to show that the assignee was agent of defendants.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

4. BANKRUPTCY (§ 303*)—PREFERENCES—INSOLVENCY—EVIDENCE—SUFFICIENCY.
    Evidence held to show that a concern was insolvent when it assigned accounts to a preferred creditor.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

5. BANKRUPTCY (§ 166*)—"PREFERENCE"—INTENT.
    Under Bankr. Act July 1, 1898, c. 541, § 60, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), providing that a transfer by an insolvent person within four months preceding bankruptcy shall be deemed to be a preference if it enables a creditor to obtain a greater percentage than others of his class, intent of insolvent to give a preference is immaterial; it being sufficient under the express terms of the section that the transferee have reasonable cause to believe that a preference was intended.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 166.*
    For other definitions, see Words and Phrases, vol. 6, pp. 5498, 5499; vol. 8, p. 7759.]

**6.** BANKRUPTCY (§ 303*)—PREFERENCES.

Evidence *held* to show that the agent of a creditor in receiving an assignment of accounts had reasonable cause to believe that the debtor was insolvent, and that the transfer constituted a preference.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

**7.** BANKRUPTCY (§ 166*)—PREFERENCES—AGENCY.

A creditor's agent's reasonable cause to believe that a transfer by the debtor is intended as a preference is imputable to the creditor.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 166.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Peter Alexander, trustee in bankruptcy, against Henry S. Redmond and others. From a decree for defendants, plaintiff appeals. Reversed and remanded, with instructions.

The trustee in bankruptcy of Borrn & Co., a corporation, brought a bill in equity against defendants, composing the firm of Redmond & Co., to set aside an assignment made to them by Borrn & Co, on September 1, 1908, within four months of the filing of the petition in bankruptcy, on the ground that the result of said assignment was to enable the defendants to obtain a greater percentage of their debt than any other creditors of the same class, and that defendants on receiving said assignment had reasonable cause to believe that by said assignment said Borrn & Co. intended to give a preference. A jury was impaneled to try the issues, but when plaintiff rested, defendants after stating that they rested subject to request for permission to reopen the case, moved for the direction of a verdict in their favor, which motion was granted.

McLaughlin, Russell, Coe & Sprague (F. C. McLaughlin and Guernsey Price, of counsel), for appellant.

Paul C. Schnitzler, for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). This being an appeal in equity, the facts as well as the law are open for our consideration, as they would be even if the jury had rendered a verdict without direction, and the issues must be disposed of upon the record brought here from the circuit court. No reservation of a motion to reopen the case extends to this court. The circumstance that a jury was impaneled is immaterial. Appeal in equity brings the cause here for final disposition. The sixtieth section of the bankruptcy act provides:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, made a transfer of any of his property, and the effect of the transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. If a bankrupt shall have given a preference and the person receiving it or to be benefited thereby, or his agent acting therein, shall have cause to believe that it was intended to give a preference, it shall be voidable by the trustee," etc. Act July 1, 1898, c. 541, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445).

Redmond & Co., bankers in New York, had for a period of two years discounted the bankrupt's paper. On August 12, 1908, they bought from it a draft on London for £500, which was not accepted

when presented to the drawee. Upon demanding repayment of the $2,431.80 paid Borrn & Co. for such draft, its representative on August 29th stated that it was in no condition to pay the money then. A conference was arranged for September 1st, and as a result of that conference a written assignment was that day made by Borrn & Co. to H. Thomas, the representattive of Redmond & Co., of certain enumerated accounts standing on the books of the former against customers to whom it had sold and delivered goods. These accounts aggregated $2,615.22, of which $2,169.81 has been collected and received by defendants.

The district judge "dismissed the complaint on the merits," and judgment to that effect was entered; in substance, though not in form, a decree dismissing the bill.

The several propositions relied upon by defendants in support of this appeal may be separately considered.

It is first contended that the accounts were assigned not to defendants, but to Thomas, and that the bill could not be maintained because Thomas is not a party defendant. The testimony showed that prior to September 1, 1908, the bankrupt owed Thomas nothing, had had no dealings with him, and did not know of his existence; that the negotiations of that day were had in the bankrupt's office with Schnitzler, counsel for Redmond & Co., who were creditors to the amount of about $2,500 and insisting upon payment or security; that the arrangement agreed to as a result of such negotiations was that Borrn & Co. should "give an assignment of accounts to secure this claim"; that, when agreement was reached, Schnitzler stepped to the telephone and called up Redmond & Co., whereupon shortly afterwards Mr. Thomen, one of the partners of that firm, arrived with Mr. Thomas, who was introduced to those present, one of the witnesses stating that it is his impression they were informed that he was Redmond & Co.'s cashier or was in the cashier's department. This testimony fairly warrants the inference that Thomas acted in the transaction merely as the agent for Redmond & Co. It was sufficient prima facie to put defendants to their proof, and, since there is nothing in the record to controvert or qualify it in any way, we conclude that Thomas was a mere cover for the firm.

It is next contended that Borrn & Co. was not insolvent on the day the assignment was executed. It is not necessary to review the testimony at length. The books of the concern were in evidence. They were examined by a competent accountant, who testified to what their entries disclosed. There was a book surplus on that date of about $25,000, made out by figuring machinery and fixtures at $18,000 and accounts receivable at over $100,000 out of a total of $170,000 assets. The president admitted on the stand that $50,000 to $55,000 of these accounts receivable had been dead accounts for a year—nothing paid on them. A year after bankruptcy the trustee had succeeded in collecting less than $3,000 of accounts receivable in addition to the $2,100 collected by defendants on accounts assigned to them. The accountant could find nothing recorded in the books sufficient to account for any sudden change of condition intermediate August 1st and November 13th when petition in bankruptcy was filed. We are entirely sat-

isfied that the condition of Borrn & Co. on September 1, 1908, was exactly what its counsel told Schnitzler it was at the interview on that day—"hopelessly insolvent."

It is next contended that complainant has not proved an intent to give a preference. This was the ground on which the district judge decided the cause holding that, although "all the parties suspected that it was an illegal preference, the bankrupt corporation was in hopes that, by the help of its other creditors, it might weather the storm, and, expecting this, did not intend to give Redmond & Co. more than the other creditors." We do not think the "intent" of Borrn & Co. is material because the statute expressly provides that a transfer by an insolvent person within the four-months period shall be deemed to be a preference, if its effect will be to enable any creditor to obtain a greater percentage than others of his class. The result of the transfer and not the mental attitude of the transferror is made the test. The last part of section 60, quoted supra, provides that in order to set aside a preference by suit against the transferee it must be shown that he "had reasonable cause to believe that it was intended thereby to give a preference." But it is surely enough to show that he had reasonable cause to believe that there was such intent, without inquiring into the actual mental attitude of the person from whom he receives the property transferred. If he has reasonable cause to believe that that person is insolvent and has also reasonable cause to believe that the effect of the transfer will be to enable the transferee to obtain a greater percentage of his debt than any other creditor of the same class, the requirements of the concluding part of section 60 are fully met.

At the interviews held on September 1st which resulted in the execution of the written transfer of book accounts there were present Frank Borrn, president of the company; Carlos Borrn, its secretary; Harris, counsel for a creditor; Ahrens, a creditor; Bond, counsel for Borrn & Co. Harris testified: That, Frank Borrn having stated to Schnitzler that the business of the firm was in the hands of certain of his creditors, witness interposed, and said that "that was hardly a correct statement of Mr. Borrn." That he represented a large creditor at Rochester, and that he was then in New York, not in connection with the claim he represented, but in connection with a proposed deal by virtue of which C. H. Tenney & Co. was to take over the hat business of Borrn & Co. That he showed Schnitzler a preliminary agreement relative to that matter, which he had been discussing with Tenney & Co. That he (witness) had ascertained the concern (Borrn & Co.) was bankrupt, and that the only salvation that he saw for the creditors was the opportunity to make a deal with Tenney & Co., and for that reason he wanted Redmond & Co. to be indulgent about their claim. That in reply Schnitzler insisted on payment, saying that, if he could not do anything else, he would throw the firm into bankruptcy. That some one suggested, he is not sure who it was, that there be a transfer of accounts. That he said he "didn't think that would be any good," and Bond said the same thing. That Ahrens said to Schnitzler that he did not see why his client should get a preference over himself, to which Schnitzler replied that he thought they

were entitled to a little preference over the rest of them, because it had not been owing so long, and they (R. & Co.) had taken it under a misapprehension. 'That, after further discussion, Schnitzler said: "I will take this assignment and take my chances on it, if you people will permit it to be given." That in about an hour the papers were prepared, whereupon, referring to them, Bond said: "Well, if you want this, all right, but I don't think that it is worth the paper it is written on." That witness said: "I don't think it is worth that if this thing goes into bankruptcy." That Schnitzler replied: "Well, go ahead and fix it up, and I will take my chances." That thereupon Schnitzler called up Redmond & Co. and Thomen and Thomas came in, the latter bringing $2,500 in cash which he turned over to Borrn as soon as the assignment was executed, and which thereafter Borrn handed to Thomen. Frank Borrn testified to the same effect, saying that he was the one that suggested the transfer. Bond gave similar testimony, adding that he personally stated to Schnitzler that Borrn & Co. were hopelessly insolvent, also that, when Schnitzler called up Redmond & Co., he heard him ask for Thomen to come at once and bring $2,500 in bills. Ahrens and Carlos Borrn corroborated Harris' account of what took place. There is no contradiction of any part of it. Whatever may have been the hopes and expectations of the officers of Borrn & Co. as to their being able with outside help to weather the storm, we are satisfied that when the transfer was made the agent of Redmond & Co. had reasonable cause to believe that Borrn & Co. was insolvent, and that the effect of the transfer would be to enable them to obtain a greater percentage of their debt than other creditors of the same class in the event of the insolvent not being able to secure further capital to enable it to go on and pay all its debts in full. We think such "belief," with which on the proof Redmond & Co. are chargeable, must be held to be a "belief" that it was "intended thereby to give a preference."

The decree is reversed, with costs, and cause remanded, with instructions to decree in conformity with this opinion.

## Memorandum on Mandate.

PER CURIAM. The defendants-appellees ask that the order for mandate provide that the cause be remanded for a new trial, instead of instructing the district court to decree in conformity with the opinion of this court, which is the usual form.

The question presented in this application has been considered and disposed of in the opinion already filed. The cause did not come here upon a writ of error to review judgment following a trial at law; the proceeding was in equity and the appellate court in an equity cause disposes of the whole cause on the record presented to it, without sending it back for a second trial. The practice of trying equity suits in the court of first instance according to the forms of actions at law apparently invites confusion and mistakes, but that is no reason why the well-settled practice in equity appeals should be changed.