### In re HERMAN.

(District Court, N. D. Iowa, Cedar Rapids Division. August 18, 1913.)

No. 756.

1. BANKRUPTCY (§ 340*)—PROOF OF CLAIMS—SUFFICIENCY OF EVIDENCE.

The making of an alleged loan to one who subsequently became a bankrupt could be disproved by the circumstances of the transaction and other circumstances, without any direct evidence contradictory of the testimony of the bankrupt, his wife, and the claimant, that the loan was made.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. § 340.*]

2. BANKRUPTCY (§ 340*)—CLAIMS—PRESUMPTIONS—DESTRUCTION OF EVIDENCE.

The destruction by a bankrupt's wife and his mother-in-law of letters between them concerning an alleged loan by the mother-in-law to the bankrupt might be considered as an admission that their contents were unfavorable to the claim that the loan was made.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. § 340.*]

3. BANKRUPTCY (§ 161*)—VOIDABLE PREFERENCES—EFFECT OF PRIOR AGREEMENT.

Under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (U. S. Comp. St. Supp. 1911, p. 1506), providing that if a bankrupt shall have made a transfer, and if at the time of the transfer and within four months before the filing of the petition the bankrupt is insolvent, and the transfer operates as a preference, and if the person receiving it or to be benefited thereby shall have reasonable cause to believe that the enforcement of such transfer would effect a preference, it shall be voidable by the trustee, a chattel mortgage given to secure an antecedent indebtedness was voidable, if the other essentials of a voidable preference were present, even though it was given pursuant to an agreement to give it, made when the indebtedness was contracted.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 161.*]

4. BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCES—INTENT OF PARTIES.

Under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (U. S. Comp. St. Supp. 1911, p. 1506), providing that if a bankrupt shall have made a transfer of any of his property, and if at the time thereof and within four months before the filing of the petition the bankrupt is insolvent, and the transfer operates as a preference, and if the person receiving it has reasonable cause to believe that its enforcement would effect a preference, it shall be voidable by the trustee, a chattel mortgage,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which the mortgagee had reasonable grounds to believe would operate as a preference, was voidable, even though the mortgagor intended no preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

5. BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCES—INTENT OF PARTIES.

Under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (U. S. Comp. St. Supp. 1911, p. 1506), providing that if a bankrupt shall have made a transfer of any of his property, and if at the time thereof and within four months before the filing of the petition the bankrupt is insolvent, and the transfer operates as a preference, and if the person receiving it has reasonable cause to believe that its enforcement would effect a preference, it shall be voidable by the trustee, where a bankrupt's mother-in-law loaned him the money with which to engage in business, and at a time when the loan was nine months overdue, and the bankrupt was hopelessly insolvent, and was being pressed by other creditors for payment, made a further loan in reliance on his promise to give a chattel mortgage, she was put upon inquiry and chargeable with knowledge as to his financial condition, and the chattel mortgage subsequently given was therefore voidable, especially where the bankrupt's wife, who must have known that the mortgage was intended as a preference, acted for her mother in requiring the promise that a mortgage would be given, and received and forwarded the mortgage to her mother.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

In the matter of Joseph L. Herman, Bankrupt. Claim of Mrs. E. T. Crocker. An order was entered by the referee allowing the claim as a secured claim against the estate, and the trustee petitions for a review. Order vacated, and matter referred back to the referee, with directions.

Deacon, Good, Sargent & Spangler, of Cedar Rapids, Iowa, for trustee.

C. F. Clark, of Cedar Rapids, Iowa, for claimant.

REED, District Judge. Joseph L. Herman was adjudged a bankrupt by this court August 16, 1912, upon his petition filed that day. On September 2d following Mrs. E. T. Crocker filed with the referee proof of a claim against the bankrupt estate in the sum of $1,500, based upon a promissory note dated August 12, 1912, due in two years, with 6 per cent. interest from date, alleged to be secured by a chattel mortgage upon the stock of groceries and store fixtures of the bankrupt and his book accounts, and asked that it be allowed as a claim secured by said mortgage, with 6 per cent. interest from the date of the note. October 19, 1912, she filed an amended proof of the claim, claiming interest on $500 thereof from November 1, 1911, upon $500 from December 1, 1911, and upon $500 from July 1, 1912, alleging that such interest had been inadvertently omitted from the note and former proof of the claim.

The trustee filed objections to the allowance of the claim in excess of $1,000, and asked that said amount be allowed as an unsecured claim only, upon the ground that the claim in excess of $1,000, and the chattel mortgage securing the same, were made (1) to hinder,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

delay, and defraud the other creditors of the bankrupt under section 67e of the Bankruptcy Act; or (2) that, if not so fraudulent in fact under said section, the mortgage was a voidable preference under section 60b of the Bankruptcy Act, as amended by the act of 1910.

Upon the hearing of these objections the referee overruled or disallowed each of them, and allowed the full amount claimed by Mrs. Crocker, and held that the mortgage securing the same was a valid lien upon the property covered by it, and directed the trustee to pay the claim in full from the proceeds of such property in preference to other creditors of the bankrupt. The trustee, in behalf of such other creditors, petitions for a review of this order.

Mrs. Crocker, the claimant, is the mother-in-law of the bankrupt. The evidence before the referee shows that about November 1, 1910, she loaned to him $500, and on December 1, 1910, another $500, for which he made to her his promissory notes for such sums, respectively, on said dates, due in one year, with 6 per cent. interest from date. That such loans were made is not contradicted by the trustee; and they were made by Mrs. Crocker to enable the bankrupt to purchase a small stock of groceries and engage in the business of a grocer in the village or town of Clarence, in Cedar county, this state, where he then lived. With the money so borrowed from her he did purchase such a stock and engaged in such business shortly after December 1, 1910. What his former occupation was does not appear; but he had no other means with which to embark in such business than the loan so made from Mrs. Crocker, and she so knew. This venture of the bankrupt was not profitable, and before July, 1912, he had become indebted to the First National Bank of Clarence for borrowed money and overdrafts in the amount of some $1,200, and to others for merchandise purchased. In the latter part of December, 1910, Mrs. Crocker went to Pasadena, Cal., and remained there until the last of August, 1912, when she returned to Clarence; and during such absence she was in frequent correspondence with her daughter, the wife of the bankrupt. About the middle of June, 1912, the bankrupt claims to have borrowed through his wife from Mrs. Crocker, while she was in California, and Mrs. Crocker claims to have then loaned to him through her daughter, another $500, for which the bankrupt made to her a third note for $500, dated July 1, 1912.

The evidence in regard to this transaction is substantially this: That the bankrupt, about the middle of June, 1912, was in need of more money to enable him to continue his business, and he requested his wife, the daughter of Mrs. Crocker, to write to her in Pasadena, asking for another loan of $500, to carry him over until fall. The wife of the bankrupt says she wrote her mother as requested by the bankrupt; that the mother answered at once that she would make the loan, but thought she ought to have a mortgage to secure her, if anything should happen to the bankrupt. Mrs. Herman at once answered her mother that the mortgage would be made as soon as the $500 was received. In a few days, and about July 1st, Mrs. Herman says she received by mail from her mother in Pasadena, in an ordinary business envelope, unregistered, $500 in money, mostly in $10 and $20

bills, and a few $5 bills. No word accompanied this money, but her mother's name was signed to a piece of paper and inclosed with the money. Mrs. Crocker says that she received the letter of her daughter asking for the loan; that she answered that she would make it, but that she thought she ought to have a mortgage; and upon receipt of the daughter's letter, saying a mortgage would be sent to her, she sent the $500, in $10 and $20 bills and a few $5 bills, in an unregistered letter to her daughter, with no word accompanying the same, other than her name upon a piece of paper, which she sent with the money. Mrs. Crocker had formerly been engaged in the millinery business in Clarence for a number of years, and at first testified that she sold this business for about $1,000 in 1910, and that she carried this money upon her person from the time she received it, and with her to and while in California; and that the $500 sent by her from California to her daughter was a part of this money. Later she testified that she was mistaken as to the time she sold her millinery business; that she sold it in 1905 or 1906, but was unable to say definitely which, and that she had carried the money received therefor upon her person ever since, except such part of it as she had used in traveling about the country; that she had sold some real estate in Clarence in 1906 or 1907, which she owned, receiving some $2,600 therefor, a part of which she carried upon her person,. and a part she loaned at interest, and deposited some in the bank, for which she received certificates of deposit bearing interest; and that the $500 she sent from California to her daughter was a part of the money she had received from the sale of her millinery stock and this real estate. She also testified that the letters she received while in California asking for the last $500 she had burned or destroyed soon after she sent the money. Mrs. Herman also testified that the letters she received from her mother, including the envelope in which the money was sent with her mother's name upon a piece of paper, she burned soon after the money was received, but for what reason such correspondence was burned neither states. The bankrupt also testifies that the wife received this $500 from her mother while she was in California, and that his wife had paid it to him at different times in July, 1912, as he needed it; and the wife also so testified.

[1, 2] The testimony as to this last loan is so improbable that it at once challenges one's belief in its truth, and the referee says of it, "Of course, it is a matter in which there are grounds for doubt;" but he concludes that, inasmuch as there is no direct evidence contradicting the testimony of Mrs. Crocker, Mrs. Herman, and the bankrupt, he finds that the loan was made as stated by them. Of this it may be said that there is no way that it could be directly disputed, that direct evidence disputing them is not essential, and that their testimony could be disproved by the circumstances of the transaction and other circumstances as effectually as by direct testimony. Quock Ting v. United States, 140 U. S. 417–420, 421, 11 Sup. Ct. 733, 851, 35 L. Ed. 501. The fact of the destruction of the letters by Mrs. Crocker and her daughter relative to the loan may be considered as an admission that they were unfavorable to this part of the claim. 1

Greenleaf's Evidence, §§ 37–195a; 1 Wigmore on Evidence, §§ 278–291, and note.

Mrs. Crocker was 76 years of age at the time she testified, had been engaged in business as a milliner for a number of years in Clarence, and says that her net income from such business was from $200 to $300 a month. She was a business woman, acquainted with business affairs, and it seems incredible that such a person would carry upon his or her person from $1,000 to $2,000 in small bills traveling over the country, as she says she did, and send $500 in $10, $20 and $5 bills in an ordinary business envelope through the mails unregistered. Admitting, however, without deciding, that the $500 was loaned by Mrs. Crocker to the bankrupt about July 1, 1912, as found by the referee, it does not follow that the mortgage of August 12th, securing that and the prior note for $1,000, is not void under section 67e of the Bankrupt Act, within the ruling in Coder v. Arts, 213 U. S. 223–241, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008, or voidable as a preference under section 60b of the act, as amended by the act of June 25, 1910.

The mortgage covers the entire stock of groceries of the bankrupt, those on hand, or that may thereafter be acquired by him during its existence, also the store fixtures and book accounts of every kind on hand, or that the bankrupt may afterwards have during the life of the mortgage, extends the time of payment of the prior notes, then past due for two years, and contains this provision:

"Privilege is given mortgagor to sell at retail said stock of groceries and merchandise in the ordinary course of trade, on condition that mortgagor maintains the stock up to its present aggregate value; also to collect said book accounts in the ordinary course of business and use the proceeds thereof."

There is no evidence of an agreement on the part of the bankrupt to make a mortgage upon anything but his stock of groceries, or that he should have the privilege contained in the mortgage, that the time of payment of the two notes should be extended, or that the bankrupt should file the mortgage for record for Mrs. Crocker or cause it to be so filed. There is much difficulty under the Iowa decisions and the decisions of the Supreme Court of the United States in holding that this mortgage is not violative of section 67e of the Bankruptcy Act. See Day v. Griffith, 15 Iowa, 104; Cobb v. Chase, 54 Iowa, 253, 6 N. W. 300; National State Bank v. Morse et al., 73 Iowa, 174, 34 N. W. 803, 5 Am. St. Rep. 670; Robinson v. Elliott, 22 Wall. 513, 22 L. Ed. 758; Means v. Dowd, 128 U. S. 273, 9 Sup. Ct. 65, 32 L. Ed. 429; Egan State Bank v. Rice, 119 Fed. 107, 56 C. C. A. 157. But, admitting that it is not so violative of said section, it is entirely clear under the testimony that it is a voidable preference under section 60b of the act as amended.

[3] The bankrupt testifies that when he borrowed the first $1,000, and for which the first and second notes were given, he promised to give Mrs. Crocker a mortgage upon his stock of merchandise as soon as he got started in business; but he did not do so. Mrs. Herman also testifies that in her letters to her mother, soliciting the loan, she promised her mother that a mortgage would be given to her, but does not say upon what. The mortgage, however, was not made until the

12th of August, 1912, only three days before the filing by the bankrupt of his petition in bankruptcy. No part of the mortgage was therefore for a present consideration, but was wholly to secure an antecedent indebtedness owing by the bankrupt to his mother-in-law. That it was made pursuant to an agreement to make the same when the loans were made does not relieve it from operating as a preference, if the other essentials of a voidable preference required by the act are present. Wilson v. Nelson, 183 U. S. 191–198, 22 Sup. Ct. 74, 46 L. Ed. 147; In re Great Western Mfg. Co., 152 Fed. 123–127, 128, 81 C. C. A. 341.

[4, 5] That the bankrupt was insolvent, when this mortgage was made, there is no room for doubt under the testimony. Nor is there any doubt that he intended by the mortgage to secure Mrs. Crocker in preference to his other creditors, though this is not essential under the amendment of 1910 to section 60b of the Bankruptcy Act; for if Mrs. Crocker had reasonable grounds to believe when the mortgage was made, or when it was delivered to her, that it would operate as a preference to her, it falls under the ban of section 60b of the Bankruptcy Act, as amended by the act of 1910. That Mrs. Crocker had reasonable grounds to so believe is entirely clear under the testimony. She had loaned the bankrupt the first $1,000 to enable him to purchase a small stock of groceries and engage in the grocery business in Clarence. He had no means, other than the $1,000 so borrowed from her, with which to purchase the stock and engage in such business, and this she knew. In June, 1912, without having paid any part of the principal of this loan, nor does she or the bankrupt testify that the interest had then been paid upon the $1,000 (though Mrs. Crocker credited a year's interest upon the notes in her amended proof), he requested his wife to ask her mother for another loan of $500 to carry him over until fall. The request for this loan and the promise to make the mortgage was made through Mrs. Herman, the bankrupt's wife. The fact that no part of the prior loan had been paid, though it was then nine months past due, with the request for an additional loan of $500 to carry him over until fall, was sufficient to put her as a reasonably prudent person upon inquiry as to his then financial condition; and she was then chargeable with all the information that such an inquiry would have disclosed. If such inquiry had then been made, there can be no doubt that it would have disclosed that the bankrupt was hopelessly insolvent, that he was being pressed by the bank for the payment of its debt, that he was unable to do so, and that the mortgage was intended as a preference to Mrs. Crocker over the bank and other creditors of the bankrupt.

Again, Mrs. Herman acted for her mother in requiring the promise that a mortgage should be given by the bankrupt when the last loan was made (if it was made), and when the mortgage was recorded it was delivered to her to be forwarded to her mother. To hold that she had no reasonable grounds to believe, when she so received and forwarded the mortgage, that it was intended as a preference to her mother, would be to disregard the testimony and sanction a deliberate violation of the Bankruptcy Act. See Dokken v. Page, 147 Fed.

438–441, 77 C. C. A. 674; McElvain v. Hardesty, 169 Fed. 31–35, 36, 94 C. C. A. 399.

Section 60b of the Bankruptcy Act, as amended by section 11 of the act of June 25, 1910, so far as applicable, reads in this way:

"If a bankrupt shall have * * * made a transfer of any of his property, and if, at the time of the transfer, * * * and being within four months before the filing of the petition in bankruptcy, * * * the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee. * * * *"

Under the section as so amended, if the bankrupt be in fact insolvent, it is only necessary that the person receiving the transfer, or his or her agent acting therein, shall have reasonable cause to believe that the enforcement of such transfer will effect a preference, to render the transfer voidable by the trustee. See Alexander v. Redmond, 180 Fed. 92–95, 103 C. C. A. 446, where it was so held by the Court of Appeals, Second Circuit, prior to this amendment.

There is not the slightest doubt under the testimony that both Mrs. Herman and her mother had reasonable grounds to put them upon inquiry as to the bankrupt's financial condition when this mortgage was made; that he was then insolvent, and both knew or had reasonable cause to believe that if the mortgage was enforced it would operate as a preference, within the meaning of the Bankruptcy Act, in favor of Mrs. Crocker over the other creditors of the bankrupt. The conclusion is unavoidable that it is a preference under section 60b of the act as amended, and voidable at the instance of the trustee.

The order of the referee, allowing the claim of Mrs. Crocker as one secured by this mortgage of August 12th, is vacated, and the matter referred back to him, with directions to allow the claim only as an unsecured claim against the bankrupt estate.

It is ordered accordingly.