THE STATE, EMILIE FREVERT ET AL., PROSECUTORS, v. THE MAYOR AND COUNCIL OF THE CITY OF BAYONNE.

Submitted December 5, 1898—Decided February 27, 1899.

1. The fair cost of a public improvement is not necessarily the measure of benefit to the property benefited thereby. If the cost exceeds the special benefits the public must bear the excess as a general benefit.

2. A uniform assessment arbitrarily imposed, by the lot, on all property affected in the same way by a public improvement will not be sustained if the advantages to the lots vary.

3. An assessment on lands for a public improvement clearly proved to exceed the benefits thereby conferred on the property will be set aside on *certiorari*.

4. Laches is not an absolute bar to relief against an assessment for a public improvement if there is legal provision for a re-assessment. The delay in this case, under all the circumstances, held not unreasonable.

On *certiorari*.

Before Justices LUDLOW and COLLINS.

For the prosecutors, *Mungo J. Currie.*

For the defendants, *James Benny.*

The opinion of the court was delivered by

COLLINS, J. The prosecutors attack the assessments imposed upon their respective lands for the benefits supposed to result from a sewer construction in the city of Bayonne, included in one municipal proceeding and . contract. This construction was somewhat peculiar. A sewer running eastward to tidewater already existed in West Fifty-second street. How the assessment therefor was distributed was not proved. In the construction now involved a three-foot brick sewer was built in Avenue D, from West Fifty-fourth street southward to West Fifty-second street, a distance of about five hundred feet, and there connected with the West Fifty-second street sewer. This three-foot sewer was intended eventually to afford sewerage facilities for quite a large section of the city lying north of West Fifty-fourth street, and was, therefore, made larger and perhaps laid deeper than would otherwise have been necessary. To connect with it there was laid an eighteen-inch pipe-sewer in West Fifty-third street, from a point five hundred and sixty-four feet west of the centre line of Avenue D, and an eighteen-inch pipe-sewer in West Fifty-fourth street, from a point thirteen hundred and sixty-feet west of such centre line. The formation of the region is of rock, lying quite near the surface. Owing to the size of

the trench in Avenue D the rock excavation was very great, averaging five and eight-tenths cubic yards to the lineal foot. In the two streets the rock excavation averaged about one cubic yard to the lineal foot. The contractor's bid was $7,330 for the sewers and appurtenances complete, with an allowance of $4.50 per cubic yard for necessary rock excavation, which proved to be four thousand nine hundred and fifty-one cubic yards. The total cost of the improvement was $34,105.82, of which $29,609.50 went to the contractor, $22,279.50 being for rock excavation, and $4,496.32 went for incidental expenses. The commissioners assessed upon the property abutting on the sewers, consisting of about one hundred and forty-four city lots, of twenty-five by one hundred feet each, the sum of $29,664.65 for direct present benefits, and upon the property eventually to be drained through this five hundred feet of brick sewer on Avenue D, consisting of about two hundred and eighty-six separate parcels—not all, however, full city lots—$4,441.17 for prospective benefits. The assessment for direct benefits was $204.75 on each city lot except as to twelve corner lots, where each assessment was $207.93. The property of the prosecutors is situate as follows: Six city lots are on West Fifty-fourth street, within the first half of the distance from the beginning point of the pipe in that street; one city lot is on West Fifty-third street, within the first half of the distance from the beginning point of the pipe in that street; one city lot is on Avenue D, at the beginning of the sewer, and one city lot is on Avenue D, very near the end of the sewer. It will be noticed that the relation of these lots to the rock excavation varies greatly.

It was proved for the prosecutors, and not disputed, that the contested assessments greatly exceed normal impositions, in Bayonne, for affording complete sewerage to tidewater. It was also proved, and not disputed, that the market value of the lots assessed has not been enhanced anything like the amount of the assessments, but it is argued for the city that the extraordinary cost of these particular sewers, due to the unusual rock excavation, makes the case exceptional, and that

cost must be taken as the measure of benefit, it not being questioned by the prosecutors that the work was honestly done and the prices paid reasonable.    Reliance is had upon the rule laid down by this court, " that the fair cost of an improvement which reasonable men would make for the better enjoyment of their property is a just criterion for determining the benefits received." *Hunt* v. *Rahway,* 10 *Vroom* 646 ; *affirmed,* 16 *Id.* 615.    But how shall we ascertain that reasonable men would have built these expensive sewers?    It is plain that cost may sometimes be so great as to be prohibitory.    I know no better standard in a case like this than the enhancement of market value.    The advantage of sewerage facilities is fairly measurable and cannot differ greatly in property of the same general class.    The lots affected in this case were cheap ,lots in an inexpensive locality.    The highest price set by any witness for lots on the cross-streets, before the building of the sewers, was $350, and for lots on the avenue, $600.    I cannot think that a reasonable man would construct a sewer for such property at a cost exceeding $200 a lot.    Besides, the prosecutors complain that by reason of the sewer in Avenue D being laid so large and deep, in order to form part of a main sewer, the laterals have been made larger and deeper than would otherwise have been necessary.    To this it is replied that it is too late to object to the size of the sewers.    True, and doubtless the prosecutors never had standing to make that objection.    The construction ordered was part of the city's general plan of sewerage, and a sufficient answer to an individual objector would have been, "You cannot be assessed beyond your benefit."    A recent case in this court indicates that a landowner may justly demand that his assessment shall be limited to the fair share of the cost of a sewer adequate to his neighborhood.    *Bayonne* v. *Morris,* 32 *Vroom* 127.    While the general rule is that the court is loath to disturb an assessment on an allegation that it is excessive and will never permit the report of the commissioners to be overcome except by proof of very great force, still, when it clearly appears by such proof that the

assessment does in fact greatly exceed the benefits received from the improvement, it is the court's duty to set it aside.

It is conceded for the city that these sewers do much more than accommodate the land assessed. They afford combined house-sewerage and surface and street drainage. The receiving basins entering into the cost assessed receive street and surface drainage outside of the area assessed. The city has certainly received some general benefit, yet none at all has been assessed. Nor has the great excess of cost to make the Avenue D section a main for future laterals been fairly apportioned. I speak, of course, relatively. Doubtless the assessment per lot for prospective benefit is all that was warranted, but that does not justify making the property directly benefited pay more in proportion. Sewering in cities is often a difficult problem. For sanitary reasons, or to conform to a general plan, it may be necessary to construct sewers that exceed in cost assessable special benefits. The excess must be put to the account of general benefits and be paid by the city at large. If a sewer improvement is asked for where there is no such reason for making it, the authorities ought to make sufficient preliminary examination to satisfy themselves that the cost will not exceed the assessable benefits; for to that extent only can the municipality be reimbursed.

In the case in hand, even on the basis of cost, the uniform assessment imposed was not justifiable. The different lots received varying advantage from the removal of rock, a matter that should have been considered in making assessments. *Vreeland* v. *Bayonne,* 29 *Vroom* 126 ; *affirmed,* 31 *Id.* 168. I can conceive of no rational rule applicable to this case that could lead to uniform assessments based on the cost of the whole improvement. Uniform assessments based on enhancement of value would be intelligible and so would assessments, within absolute benefits, based on actual proportions of advantage to individual lots; but neither of these rules can be evolved from the result reached by the commissioners.

Though not strictly an estoppel of record, it is, I think, relevant. evidence and was proved in the cause, that this court,

at the November Term, 1897, at the suit of Cecilia Detwiller and other prosecutors, set aside, by the consent of the then city authorities, the assessments against their lots for this very improvement, and that new assessments much lower have since been made and confirmed. It is argued that there may have been something peculiar in the situation of the property of those prosecutors, but a reference to the report and maps shows that lots on every part of the improvement, eighty-two in all, were involved in the case.

It is urged that the present prosecutors are in laches, and should therefore be denied relief. The assessment was confirmed August 20th, 1895, but on June 23d, 1896, the confirmation was rescinded by a resolution in turn rescinded July 7th, 1896. On April 6th, 1897, the city council again resolved that the assessment should be reconsidered, but the mayor, on August 19th, 1897, vetoed the resolution. Meantime the Detwiller suit was pending. In face of this evident reason to look for relief at home the prosecutors should not be held to have been supine or indifferent. The new assessment secured by the *former* prosecutors was only confirmed June 11th, 1898. The present writs were allowed October 15th, 1898. While unreasonable delay will ordinarily induce this court to refuse its prerogative writ to review an assessment for defects in procedure or alleged excessiveness, and perhaps should always have that effect where there is no way of subjecting the lands affected to a proper share of the public burden, there seems to be no good reason for denying just relief where there is a power of re-assessment, as there is in the case now before us. *Bayonne Charter, Pamph. L.* 1872, *p.* 686, § 80. There are precedents for the setting aside of illegal or defective assessments, where there was power of re-assessment, although there was laches greater than that in this case, even if we reckon from the original confirmation of the assessment. *State, Graham* v. *Mayor of Paterson,* 8 *Vroom* 380 ; *State, Hoxsey* v. *Mayor of Paterson, Id.* 409. Upon a re-assessment justice can be done both to the city and the landowner. That, as appears in testimony, some other landowners

(about twenty in all) have paid their assessments is immaterial. Nearly all who paid did so in 1895, and no one has paid since March, 1897. No payment has been induced by supposed acquiescence of other landowners.

The assessment will be set aside as to the prosecutors, with costs, and new commissioners will be appointed on application.