DREES v. WALDRON et al.

(Circuit Court of Appeals, Eighth Circuit. February 16, 1914.)

No. 134.

*(Syllabus by the Court.)*

**1. EQUITY (§ 67*)—LACHES—EXISTENCE DETERMINED.**

The doctrine of laches protects against a proceeding instituted or prosecuted without diligence, and where the delay· and thus the fault of one party will result in an unfair advantage over his adversary. The existence of laches is primarily determined, not by lapse of time, but by considerations of justice.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 191–196; Dec. Dig. § 67.*]

**2. EQUITY (§ 67*)—DOCTRINE OF LACHES—OPERATION AND EFFECT.**

The doctrine operates not only as against the filing of a stale suit, but also against the slothful prosecution of a suit seasonably filed.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 191–196; Dec. Dig. § 67.*]

**8. EQUITY (§ 84*)—LACHES—DETERMINATION.**

Where application is made to a court of equity for aid toward the prosecution of a suit in another court, the court first named will not leave the question of laches to such other court, but will decline the relief where, because of delay in the prosecution of the application, it would be inequitable to grant it.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 84.*]

**4. EQUITY (§ 67*)—DOCTRINE OF LACHES—OPERATION AND EFFECT.**

The doctrine of laches is to the extent just named available therefore not only in defense but in prevention. It applies both against inceptive and against final relief.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 191–196; Dec. Dig. § 67.*]

**5. BANKRUPTCY (§ 417*)—DISCHARGE—PROCEEDINGS TO REVOKE—LACHES.**

A bankrupt was discharged on October 20, 1904. On January 3, 1905, a creditor filed an application to revoke the order of discharge upon the ground that he had had no notice of the hearing on discharge, and in order that he might without prejudice from the discharge prosecute a proceeding in the state court to subject bankrupt's exempt homestead to his debt. This application was not brought on by him for hearing for over seven years, during which time the bankrupt had died. *Held* that, as against the heirs and legal representatives of the deceased bankrupt, the creditor was barred by his laches from prosecuting his application.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

Petition to Revise Order of the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Petition by B. H. Drees against D. E. Waldron, administrator of the estate of Alexander Armstrong, deceased, and others, to vacate an order of discharge in bankruptcy. Petition denied, and petitioner presents petition to revise. Decree below approved, and petition to revise dismissed.

L. H. Salinger, of Sioux City, Iowa, and B. I. Salinger. of Carroll, Iowa, for petitioner.

William R. Lee and Edwin A. Robb, both of Carroll, Iowa, for respondents.

Before SANBORN and HOOK, Circuit Judges, and POPE, District Judge.

POPE, District Judge. On August 6, 1904, Alexander Armstrong was adjudged a bankrupt. The petitioner, Drees, was regularly listed as a creditor with his proper address, Carroll, Iowa, given in the schedules attached to the bankrupt's petition. On September 28, 1904, the bankrupt filed his petition for a discharge, and upon the next day the referee fixed October 15, 1904, as the date for filing any objections thereto. On September 29th, notice of the petition for discharge and of the date for filing objections was mailed to Drees at his address above stated. On September 30, 1904, the trustee in bankruptcy filed with the referee his report setting off to the bankrupt the property exempt to him by the laws of Iowa. Among the latter was a homestead composed of lots 14, 15, 16, and 17 in block 3 in the town of Glidden, Carroll county, Iowa, valued in the report at $5,000. On October 7, 1904, Drees filed with the referee exceptions to this report, and the hearing of such was set for November 10, 1904. On October 28, 1904, the bankrupt was granted his final discharge. On November 10th the above-mentioned exceptions of Drees were overruled. This action was upon the concession of counsel for Drees —presumably in the light of the law as declared in Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061, that the proper method of reaching the homestead property was by a proceeding to subject instituted in the state court. On November 22, 1904, pursuant to this last, Drees filed such a proceeding in the courts of Iowa. This is still pending. On January 3, 1905, Drees filed in the court below his petition for the revocation of the discharge. On November 6, 1909, there was an order of court closing the bankrupt proceedings. In July, 1911, Armstrong, the bankrupt, died in Carroll county, Iowa. In September, 1912, an order was made by the court below on application of Drees for a hearing on his petition to revoke the discharge filed as above stated on January 5, 1905, and upon which up to that time no action had been taken. On November 12, 1912, such notice was given to respondents, the administrator of the estate of Armstrong, and to his heirs. The matter having been heard, the court on January 21, 1913, denied the application to vacate the order of discharge. From this conclusion the present petition to revise has been prosecuted.

The motion to vacate the order of discharge presented by Drees to the court below was upon the ground that such was granted without notice to him. While conceding that the letter containing the notice was duly mailed to him at the proper address shown in the schedule, his contention and proofs were that this letter was never received and that he had no actual knowledge of the application for discharge until December 15, 1904, whereupon he as above stated on January 3, 1905, filed his motion to revoke upon that ground. The opposition to this motion proceeds chiefly upon two grounds: First, that the mailing of the notice to him at his proper address, which was confessedly done, was a sufficient service upon him under section

58a of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3444]), whether as a matter of fact it ever reached him or not. Independent of this last, it was in the second place contended that there was such laches by Drees in prosecuting his motion to vacate as to preclude the relief sought. The trial court decided both points in favor of the respondents. We find it necessary to consider only the last of these contentions.

[1, 5] In determining laches, time and circumstance are each material elements. Upon the matter of time it will be noted that the application was filed by Drees in January, 1905, and that he did not call it up for hearing until September, 1912, and thus after a delay of some seven years and nine months. During this interval the estate had been closed and Armstrong died. The importance of Armstrong's death to some extent depends upon the purpose of petitioner's application to revoke the discharge, and necessitates a brief statement of the nature of that application. This was not a motion to revoke under section 15 of the act. That section permits a revocation of the discharge within a year when the discharge has been obtained by fraud and where the actual facts of the case do not warrant the discharge. It is not here contended either that the discharge was obtained by fraud or that Armstrong was not entitled to it upon the merits. The application is rather an appeal to the general powers of the court, as in Re Bimberg (D. C.) 121 Fed. 942, to recall an order irregularly granted. The object sought to be attained by securing the setting aside of the discharge is the clearing up of the way for the proceedings in the state court. In this latter there will be among other questions of fact, the following: Was the debt to Drees from Armstrong made before or after the acquiring of the exempted homestead? If before, was the exempted homestead purchased with the proceeds of any former homestead antedating the debt? Was the homestead now involved more valuable than the first, and, if so, what was the difference in value and would petitioner's claim attach to that difference? The result of granting the motion here made will be to leave petitioner free to litigate these questions in the state court.

Should the court have granted the petition for the purposes and under the circumstances above disclosed? The doctrine of laches protects against a proceeding instituted or prosecuted without diligence and where the delay and thus the fault of one party results in an unfair advantage over his adversary. The existence of laches is primarily determined not by lapse of time but by considerations of justice. As was said by the Supreme Court in Patterson v. Hewitt, 195 U. S. 309, 317, 25 Sup. Ct. 35, 36 (49 L. Ed. 214):

"The statute (of limitation) frequently works great practical injustice—the doctrine of laches, never. True, lapse of time is one of the chief ingredients, but there are others of almost equal importance."

Assuming that the passing of over seven years would not of itself constitute a barrier to this motion, that interval in the light of the death meanwhile of Armstrong becomes *most important*. The effect of Armstrong's death, of course, was to deprive his side of the controversy of his testimony upon all of the issues above referred to, and

perhaps upon others that might become relevant. This was a very substantial disadvantage to respondents. True, as counsel suggests, there is an Iowa statute which prevents a party and his wife from testifying as to transactions with the opponent where the latter is dead, and this to some extent mitigates the absence of Armstrong's testimony, since, upon these matters, it debars Drees and his wife from the stand. But it is by no means certain that this will fully meet the situation. It is entirely conceivable that parties other than Drees and his wife heard statements by Armstrong upon one or more of the issues in the case, which statements, if proved, must go entirely uncontradicted upon the trial because of Armstrong's absence by death. There may be other respects in which his testimony would upon the trial be found relevant and desirable. We cannot anticipate all of these, nor do we feel called upon to enter into any close calculation as to them. It is sufficient upon this point that within reasonable probabilities based upon human experience there will be highly material matters as to which Armstrong's testimony will be important. It is also urged by counsel that the facts provable by Armstrong could be established by other witnesses. Perhaps so, perhaps not. Whether this would be true or not could be disclosed only by the trial and must remain uncertain until then. Viewing the matter also from the standpoint of human probabilities, however, we are impressed with this fact: Armstrong were he alive would undoubtedly know as to these various matters, he was the actor in them, his absence relegates the respondents to the recollection of third parties or of persons only secondarily interested, a recollection necessarily affected by the seven or more intervening years. On the other hand, had this application been brought seasonably to hearing, the necessity upon respondents to seek their testimony from uncertain and secondary sources would not have existed. To countenance this delay is in our judgment to impose an unjust and unfair disadvantage upon one of the parties and this we cannot do.

But aside from the matter of mere testimony, it is clear that in the trial of any cause the presence of the principal party at interest is desirable. He more than any one else ordinarily knows of his case and if present serves, independently of what he testifies to, to anticipate, to guard against and overcome adverse conditions and evidence. The litigant has the right to be present not only as a witness but as a party, and, when this right is lost by delay of the adverse party, the latter should not be allowed to profit thereby.

[3, 4] Nor is this situation relieved by petitioner's contention that the matter of laches is one to be considered exclusively by the state court on the trial of the merits, and that the only question here is whether or not such proceedings shall go to trial unembarrassed by the order of discharge. We cannot, however, view the matter as so little concerning the bankruptcy court. Substantial relief was sought from that court by petitioner, and it was asked to invest petitioner's case elsewhere with a potentiality which it would otherwise lack. The bankruptcy court, as we have repeatedly had occasion to observe, is a court of equity, and upon an appeal to it for even this inceptive relief

such a court will decline to lend its aid to a proceeding thus manifestly inequitable. Laches is available not only in defense, but in prevention. It may be invoked not only to defeat final decree, but a step opening up the way to such a decree. This delay of over seven years in bringing this application to hearing was entirely without explanation or excuse. The courts of the land are open not only for the seasonable presentation, but for the prompt determination of controversies. Where parties fail for so unreasonable a time even to move the cause for hearing, and meanwhile the adversary dies, and with him pass away material elements of defense, the suitor thus delaying must expect no help from a court of equity. We deem Lindeke v. Converse, 198 Fed. 618, 117 C. C. A. 322, recently decided by this court, very close to the present case. There the bankrupt had failed to bring her petition for discharge to hearing for some four years.

[2] In holding, contrary to the ruling below, that a motion to dismiss the petition should have been granted, this court cites Johnston v. Standard Mining Co., 148 U. S. 360, 13 Sup. Ct. 585, 37 L. Ed. 480, and Willard v. Wood, 164 U. S. 502, 17 Sup. Ct. 176, 41 L. Ed. 531, to the following effect:

"It has been frequently held that mere institution of a suit does not of itself relieve a person from the charge of laches, and that, if he fail in the diligent prosecution of the action, the consequences are the same as though no action had been begun."

The court, speaking through Judge Sanborn, continues as follows:

"It is obvious that a wise and just administration of this law requires that such issues shall be framed and tried before the memory of the witnesses familiar with the transactions of the bankrupt at and shortly before the time of his adjudication has been dimmed by long delay and before they and the documentary evidence surrounding these transactions have been scattered or lost. The record in this case is so clear and compelling that the court is unable to resist the conclusion that the bankrupt failed to exercise that reasonable diligence in the prosecution of her claim for a discharge which is requisite to call a court of equity into action in her behalf."

These expressions are very pertinent here. Without considering the first point raised, we are of opinion that petitioner's application is barred by his laches, and the decree below is, accordingly, approved, and the petition to revise dismissed.