## KANSAS CITY SOUTHERN RY. CO. et al. v. MAY et al.

(Circuit Court of Appeals, Eighth Circuit. November 8, 1924.)

No. 6556.

1. Constitutional law ⟨key⟩233, 290(1)—Highways ⟨key⟩140—Road district benefit assessment must not be arbitrary and discriminatory.

An assessment of benefits by a road district must not be arbitrary and discriminatory, but must be estimated on contiguous property according to some standard which will probably produce approximately correct general results, in order to avoid denial of due process and equal protection within Fourteenth Amendment.

2. Highways ⟨key⟩140—Benefit assessment against railway right of way held discriminatory.

A road district benefit assessment against railway right of way within district at rate of $44,000 per mile or $3,900 per acre, in farming community containing no large towns, where benefits to farm lands were assessed from $25 to $40 per acre, held grossly excessive and· flagrantly discriminatory.

3. Highways ⟨key⟩140—Benefit assessment on railroad right of way of $10,000 per mile held arbitrary and discriminatory.

Evidence of character of land within district, population, economic conditions, and possible increase in railroad business, held insufficient to show that assessment of $10,000 per mile of railroad right of way, or total of $80,000 on right of way within district for construction of 15 miles of highway, was not arbitrary and discriminatory.

4. Appeal and error ⟨key⟩1009(4)—Finding of trial judge in equity will be reversed if clearly against weight of evidence.

Where finding of trial judge in equity proceeding is clearly against weight of evidence, it will be reversed.

5. Highways ⟨key⟩142—Arkansas county court without authority to change assessments in absence of written objections and hearing.

County courts in Arkansas have only such powers as are conferred by the state Constitution or statutes and such as by necessary implication arise thereunder, and a county court is given no authority to change road district assessments where no written objections were filed thereto and no hearings had thereon, in view of Crawford & Moses' Dig. Ark. §§ 5423, 5425, 5429, 5430.

6. Highways ⟨key⟩142—Railroad agreeing to reduced assessment held entitled to attack it for fraudulent reduction of other assessments increasing its proportion.

Where road district commissioners, after objection by railroad, agreed that its assessment should be reduced from 24 per cent. of total benefits to approximately 6 per cent. thereof under circumstances which led railroad's representatives to believe that assessments of other lands would not be reduced, and though no objections were made by other owners and no hearings had, other assessments were reduced by county court to extent making railroad's assessment 31 per cent. of total, and railroad was not informed until time for appeal had passed, a legal fraud was perpetrated entitling railroad to disregard the compromise and attack the assessment.

7. Equity ⟨key⟩11—Relieves against fraud.

It is the peculiar province of equity to relieve against every species of fraud and trick-

ery resulting in unjust advantage over others, whether by decree in equity, judgment at law, or other contrivance.

**8. Highways ⬯148—Remedy by appeal cannot be claimed adequate where commissioners fraudulently caused railroad to lose right of appeal from assessment.**

Where road district commissioners, after making compromise agreement with railroad as to its assessment, by trickery and fraud led railroad to believe that other assessments would not be reduced until time for appeal was past, and assessment as whole was grossly arbitrary and discriminatory, it cannot be contended by commissioners that remedy by appeal from final assessment provided by Crawford & Moses' Dig. Ark. § 5425, is complete and adequate.

**9. Highways ⬯148—Statutory remedy by motion held not so certainly applicable as to preclude resort to equity.**

In action by railroad to enjoin collection of road district benefit assessments for fraud, *held*. the remedy provided by Crawford & Moses' Dig. Ark. § 6290, by motion is so doubtful, in view of state decisions, that statute cannot be said to provide such plain, certain, and adequate remedy at law as to preclude resort to equity where assessment was so palpably discriminatory as to deny equal protection.

**10. Equity ⬯70—No laches until knowledge of fraud acquired.**

Where fraud is involved, laches will not commence to run as to a party affected thereby until he has knowledge of the fraud.

**11. Equity ⬯71(1), 87(1)—Laches not governed by statutes of limitation nor dependent upon mere lapse of time.**

Laches is not governed by state statutes of limitation, nor dependent upon mere lapse of time.

**12. Equity ⬯67—Doctrine of laches is to promote, not defeat, justice.**

The doctrine of laches is to promote justice, not to defeat it.

**13. Highways ⬯148—Road district commissioners not entitled to urge laches in action to enjoin assessments.**

Road district commissioners, whose fraud in making benefit assessment led complainant railroad to lose its right of appeal from arbitrary and discriminatory assessment, *held* not in position to urge laches in railroad's action to enjoin collection of assessments.

**14. Highways ⬯148—Road district bondholders not persons prejudiced entitled to set up laches.**

Bondholders of road district have no interest in what property must pay assessments of benefits, so long as sufficient sums be raised to secure and protect them, and hence they are not persons prejudiced by delay of railroad in bringing suit to enjoin collection of fraudulent, arbitrary, and discriminatory assessment entitling them to urge complainant's laches.

**15. Highways ⬯144—Where benefit assessment set aside, reassessment authorized.**

Under Crawford & Moses' Dig. Ark. § 5430, where collection of road district assessment of benefits as to certain property is enjoined, a reassessment is authorized and must be made subject to the restriction that total amount of benefits should not be diminished below amount of district's obligation.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit for injunction by the Kansas City Southern Railway Company and others against C. E. May and others, in which the W. B. Worthen Company, as trustee for bondholders, intervened as party defendant. From a decree denying injunction, complainants appeal. Reversed and remanded, with directions.

Frank H. Moore, of Kansas City, Mo. (Arthur F. Smith, of Kansas City, Mo., and Samuel W. Moore, of New York City, on the brief), for appellants.

A. P. Steel, of Ashdown, Ark. (Du Laney & Steel, of Ashdown, Ark., on the brief), for appellees.

Before STONE and KENYON, Circuit Judges, and FARIS, District Judge.

KENYON, Circuit Judge. Appellants brought action in the District Court of the United States for the Western District of Arkansas against road improvement district No. 1 of Little River county, Ark., C. E. May, A. J. Russell, and P. G. Traylor, as a board of improvement of road improvement district No. 1 of Little River county, Ark., the same parties as board of improvement of "repair and extension district of road improvement district No. 1 of Little River County," A. T. Collins, sheriff, and R. E. Huddleston, county clerk, defendants, claiming that certain assessments made against appellants for the construction of roads in said district No. 1 were illegal and void, and asking that the collection of them be restrained. Appellant Texarkana & Ft. Smith Railway Company owns most of the right of way through the county of Little River. The two appellants under some arrangement operate as a continuous line from Kansas City, Mo., to Port Arthur, Tex.

Road improvement district No. 1 of Little River county, Ark., is a district organized under the general law of Arkansas, commonly known as the Alexander Road Law (Acts 1915, p. 1400), providing for the organization of improvement districts for the construction of highways. The district, as organized, includes approximately 8 miles (being about 86 acres) of the right of way of appellants, and embraces a farming community. The mileage of the three highways to be built within said district was about 15 miles. Appellants were assessed benefits of $335,000 on their right of way. Outside of the right of way there were approximately 24,000 acres in the district. The lands assessed were divided into two zones; those in zone No. 1 were assessed $40 per acre; in zone No. 2 $25 per acre. The amount of

assessed benefits against the farm land was $890,874; against appellants, $335,000; and against other corporations, $129,000. After these assessments were made, notice was published, as provided by law, stating that parties aggrieved could appear before the county court on July 21, 1915, and that grievances and objections must be presented in writing. Appellants duly filed objections on that date; likewise four other property owners. No order was made on July 21st relative to the assessment of appellants' property. Assessments against two other property owners were acted upon. On July 29, 1915, the commissioners and county court met; the assessments of appellants and remaining parties who had filed objections were reduced; and the assessments of all the other property owners in the district were also reduced, although no objections had been filed by them, and no evidence heard.

The reduction of appellants' assessment was to carry out an agreement made between appellants' attorney and the board of commissioners of the road district, by which it was agreed that the assessment should be reduced from $335,000 to $80,000, or approximately 6 per cent. of the total original assessment of $1,354,874. Appellants also claim that it was a part of the agreement that the assessment should not be reduced on the other properties in the district where no objections in writing had been filed. The result of the reducing of the assessments was that the total assessment of benefits on all property in the district was reduced to $255,755. Appellants' assessment of $80,000 was approximately 31 per cent. of the new total assessment of benefits. Under the old assessment appellants were assessed approximately 24½ per cent. of the total cost, so the discrimination against appellants was increased by the new assessment. Appellants relied on the compromise agreement and did not learn of the action taken on July 29, 1915, reducing all the assessments, until the time for taking appeal under the statute had expired. Appellants' local attorney was thereafter informed by one of the commissioners of the situation, and was told by him that the railroad was worse off than it was before it had contested the proceeding, and would be compelled to pay a higher proportion of the taxes than it otherwise would. The district attorney of appellants endeavored to secure a reassessment by the commissioners, and appellants claim that they kept on trying to secure such reassessment, rather than engage in litigation, until April, 1921, when the district attorney was advised by the commissioners, after the tax for that year had been paid, that no reassessment would be granted. The tax was to be paid in installments extending over a period of years, and for six years prior to the commencement of this action appellants paid the proportional tax due for the year.

In 1920 the Arkansas Legislature passed "An act creating repair and extension district of road improvement district No. 1 of Little River county," for the purpose of extending two roads constructed by the original road district No. 1, and of repairing the roads constructed in said original road district. This repair and extension district had the same boundaries as road district No. 1, and it was declared in said act that all property in the road district would be benefited to an amount equal to 60 per cent. of the benefits assessed in road district No. 1. There being a mistake of description in the act of 1920, additional legislation was enacted in 1923 (Sp. Acts 1923, p. 307) to make it effective, and it is claimed the officers of the repair and extension district were about to levy taxes when this suit was brought.

A petition of intervention was filed by W. B. Worthen Company, holder of a mortgage, as trustee for the bondholders, and by order of the court the Worthen Company was made a party defendant.

Appellants claim that no benefit accrues to their property by reason of the construction of the roads; that a fraud was practiced upon them in the order that was entered on the 29th day of July, 1915, fixing the assessment upon their property at $80,000, and reducing other assessments without objection thereto having been filed in writing.

The trial court held that appellants could not sustain a suit to enjoin collection of the assessments on the ground that their property was not benefited by the improvement, for the reason that the time within which such a suit could have been brought had expired; that appellants had appeared in the county court and secured a reduction of the assessment; that no appeal was taken, and that having paid these annual assessments they could not be heard to complain of the unconstitutionality of the assessment.

The court further found that the fraud claimed by appellants in the entry of the order fixing the assessment at $80,000, and at the same time reducing all other assessments, was not established, and that if any such agreement, as claimed, had been made,

appellants had notice of the reduction, and bringing no action to set aside the order, but paying the taxes for six years, were barred by laches from maintaining the suit in so far as road improvement district No. 1 was concerned. It held that any benefit to appellants from the road improvement under the Repair and Extension District Act was out of proportion to the assessments made against the property of other property owners, and granted a permanent injunction against the repair and extension district. From the action as to the repair and extension district no appeal was taken; hence that question is not before us. The appeal is from the decree refusing to grant relief against the assessment by road district No. 1.

Other questions are raised with relation to the levy for the year 1923 being in excess of the amount the district had authority to levy, and further complaint is made that a penalty of 10 per cent. for the tax of 1923 was assessed by the court. These questions become unimportant in the view we take of the case.

I. Was the assessment of benefits so arbitrary and discriminatory as to violate the provisions of the Fourteenth Amendment to the Constitution?

[1] The law is well settled. Road districts for the construction of highways may be established in such method as the Legislature of the state may provide, and the burden of paying for such improvements may be apportioned among those benefited. This distribution of benefits by way of assessment for the purpose of taxation must not be arbitrary and discriminatory. It "must be estimated upon contiguous property according to some standard which will probably produce approximately correct general results." Kansas City Southern Railway Co. et al. v. Road Improvement District No. 6 of Little River County, Ark., 256 U. S. 658, 661, 41 S. Ct. 604, 65 L. Ed. 1151. If not, it violates the Fourteenth Amendment to the Constitution.

Speaking of a drainage assessment, in Thomas, Sheriff, etc., et al. v. Kansas City Southern Ry. Co. et al. (C. C. A.) 277 F. 708, 712, affirmed by the Supreme Court in 261 U. S. 481, 43 S. Ct. 440, 67 L. Ed. 758, this court said: "Such assessment cannot stand if it is 'palpably arbitrary,' or if it is palpably discriminatory." That such is the test is established by Houck v. Little River Drainage District, 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266; Phillip Wagner, Incorporated, v. Leser et al., Judges and Tax Collector of Baltimore City, 239 U. S. 207, 36 S. Ct. 66, 60 L. Ed. 230; Miller & Lux, Inc., v. Sacramento & San Joaquin Drainage Dist., 256 U. S. 129, 41 S. Ct. 404, 65 L. Ed. 859; Kans. City So. Ry. v. Road Imp. Dist. No. 6, 256 U. S. 658, 41 S. Ct. 604, 65 L. Ed. 1151; St. Louis & Kansas City Land Co. v. Kansas City, 241 U. S. 419, 36 S. Ct. 647, 60 L. Ed. 1072; Gast Realty & Inv. Co. v. Schneider Granite Co., 240 U. S. 55, 36 S. Ct. 254, 60 L. Ed. 523; Thomas, Sheriff and Collector, et al. v. Kansas City Southern Railway Co. et al., 261 U. S. 481, 43 S. Ct. 440, 67 L. Ed. 758; Missouri Pac. R. Co. v. Road Improvement Dist. No. 1 of Hot Springs County, Ark., et al. (C. C. A.) 288 F. 502; Board of Directors of Miller Levee Dist. No. 2 v. Prairie Pipe Co. (C. C. A.) 292 F. 474; Thornton et al. v. Road Imp. Dist. No. 1 of Clark County, Ark., et al. (C. C. A.) 291 F. 518; Road Imp. Dist. No. 2 of Conway County et al. v. Missouri Pac. R. Co. (C. C. A.) 275 F. 600.

[2] That the original assessment of $335,000 against appellants, with 7.52 miles of right of way in the district, of an acreage of 86 acres, amounting to about $44,000 per mile or approximately $3,900 per acre, and in a farming community the largest town of which had a population of 2,052 people, as benefits to appellants, by the construction of three roads aggregating 15 miles in length, while the farm lands in the district were assessed from $25 to $40 per acre, is so grossly excessive and flagrantly discriminatory as to be an abuse of the taxing power, requires no discussion. The figures furnish convincing argument. Evidently the commissioners were satisfied that such attempted confiscation of property could not stand the constitutional test in the courts, and so, after objection had been filed in writing to the assessments, entered into an agreement with attorneys for appellants to have the same reduced to $10,000 per mile, or approximately 6 per cent. of the entire cost.

Waiving for the time the question of any agreement on the part of the appellants as to the assessment of $10,000 per mile, was such assessment, in the absence of agreement, so arbitrary and discriminatory in comparison with the other assessments as to amount to a denial of the equal protection of the law? Applying the test before referred to as to palpable discrimination to the facts in this case, what is the result?

That good roads in a territory served by a railroad develop the country, and as said

by the Supreme Court of the United States in Branson, Sheriff and Collector of Crawford County, et al. v. Bush, Receiver of the St. Louis, Iron Mountain & Southern Railway Company, 251 U. S. 182, 191, 40 S. Ct. 113, 64 L. Ed. 215, must necessarily be of benefit to it, and that no agency for such development equals that of good roads may be readily admitted.

The trial court seems to have concluded that any benefit to the railroad companies by construction of the roads was problematic. No system of "delusive exactness," as referred to by the Supreme Court in Louisville & Nashville Railroad Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819, can be devised for the assessment of benefits by special local improvements. Yet there must be exactness enough not to put palpable, unjustifiable burdens on one property owner and thereby relieve others. There should be no special privilege in relief from just and equal taxation.

While the testimony here is speculative as to any benefit to the railroads by the construction of the highways, the court is justified in assuming, under the evidence, that there is some benefit by the supposed increase of traffic due to development of the territory in the district.

[3] Is this sufficient to justify an assessment of $10,000 per mile in this particular district? The only town of any importance in the district is Ashdown with a population of about 2,000 people. The evidence shows there are approximately 24,000 acres of land in the district, consisting of river bottom land, drainage upland land, and flat woods land; that the total area susceptible of cotton cultivation would be 14,000 acres; that if the entire area of the district susceptible of such cultivation were brought thereunder as a result of the improved highways, and assuming the average yield per acre, and assuming further that the entire output would move to market by appellants' railroads and move to the furthest point on the line, viz., Port Arthur, and at the highest freight rate, the result in gross earnings would be $31,819.13; and assuming, as testified, that of the gross earnings 25 per cent. would be net, the net earnings would be $7,954.78. It is testified that such increase in net earnings would increase the value of appellants' railroad in this road district in the sum of $1,193.16. Looking at it in another way, and for the purpose of illustration: Assessments on the farm lands were reduced one-fifth of the original assessments. Had ap-

pellants been treated the same as the owners of farm land, their ... ssments would have been reduced to ... 37,... 00 instead of $80,000. While the be... of benefits to a railroad and to farm lands by the construction of highways may be entirely different, and acreage in many instances bears no relation to value or benefits, yet we think it pertinent in this case to note that the assessments on farm lands in zone 1 were reduced from $40 per acre to $8 per acre, and in zone No. 2 from $25 per acre to $5 per acre. Under the presumed reduction the assessment against appellants' 86 acres in the right of way would be $930 per acre. These facts show that the assessment of $10,000 per mile burdened the appellants' property for the improvement 116 times as much per acre as it did the lands in zone No. 1, and 186 times as much as the lands in zone No. 2.

In Missouri Pac. R. Co. v. Road Imp. Dist. No. 1 of Hot Springs County, Ark., et al. (C. C. A.) 288 F. 502, this court discusses an assessment for road purposes in a road improvement district in Arkansas. There the railroad had 500 acres in its right of way within the district, and benefits assessed amounted to a little more than $200 per acre, while farm lands lying along its right of way were assessed benefits of $2.40 per acre, and this court held that such facts show a palpably arbitrary abuse of power violative of the Fourteenth Amendment.

The discrimination here is more marked than the discrimination there. Had the assessment of $10,000 per mile been the original assessment, under the facts presented by this record it would be perfectly clear that it was such a palpable, unjust, arbitrary, and discriminatory assessment as to be a practical confiscation of particular property, and void. Paraphrasing the language of the Supreme Court in Kansas City So. Ry. v. Road Imp. Dist. No. 6, 256 U. S. 658, 41 S. Ct. 604, 65 L. Ed. 1151: To say that approximately 8 miles of railroad in a purely farm section, treated as an aliquot part of the whole system, will receive benefits amounting to $80,000 from the construction of 15 miles of gravel road, seems wholly improbable, if not impossible.

II. Appellees contend that the assessment of $10,000 per mile was agreed to by appellants, and that it cannot now be questioned. Appellants' reply to this is that their objection to the assessment of benefits against their property was that the same was excessive and discriminatory as compared with the assessment of benefits against other

property; and that the pretended in the assessment of benefits upon all the property in the district where no written objections had been filed, and without notice to the appellants after the compromise which had been made, increased the discrimination against them instead of correcting it; and that the action of the commissioners in bringing about said reduction and the action of the county judge in making said reduction resulted in a fraud upon them and vitiated any agreement they may have made, and opened the door of contest to them.

[4] The trial court found against appellants on the issue of fraud; and while such finding is entitled to serious consideration, if it be against the weight of evidence it is not binding on the appellate court. In Bush v. Branson, Sheriff and Collector, et al., 248 F. 377, 383, 160 C. C. A. 387, 393, this court said: "The finding of a trial judge is entitled to high consideration, and unless clearly against the weight of the evidence, or caused by a misapplication of the law, will not be disturbed on appeal. On the other hand, if the finding is clearly against the weight of the evidence, the appellate court, in a proceeding in equity, will reverse it, as on appeal the facts as well as the law are open for consideration." See, also, Alexander v. Redmond et al., 180 F. 92, 103 C. C. A. 446; Road Imp. Dist. No. 2 of Conway County et al. v. Missouri Pac. R. Co. (C. C. A.) 275 F. 600.

The situation disclosed by the record is this: After the original assessment of benefits against appellants in the sum of $335,000, which was approximately 24½ per cent. of the total, or about one-fourth of the cost of the improvement, and after publication of notice by the county clerk as provided by law of the assessment of benefits and damages as made by the assessors of road improvement district No. 1, which contained a notification to appear before the county court on the 21st day of July, 1915, appellants appeared through their attorneys on said 21st day of July and filed their written objections to the assessment of benefits which had been made. Other objections were filed by the M. D. & G. R. R. Company, Arkansas Trust & Banking Company, J. M. Johnson, and the Prairie Pipe Line Company. Immediately the commissioners commenced negotiations with the representatives of appellants with relation to a compromise. Most of the conversations appear to have been with one W. L. Perkins, a member of the board of commissioners of

road district No. 1 at that time. When asked as a witness what agreement there was made between the commission and Mr. Morrell representing the appellants, he stated that they agreed to reduce the assessment about three-fourths; that they agreed to assess appellants at $10,000 a mile on the estimated basis of eight miles. He does not testify that under the agreement all the other assessments were to stand as they were, but does say that in all probability Mr. Morrell (attorney for appellants) so understood it. The testimony shows that Mr. Morrell was negotiating with him on the basis of the Kansas City Southern Railway Company (the operating company), one of the appellants, paying approximately 6 per cent. of the total cost, and that Mr. Morrell left him with the impression on his part that said railway company was to pay about 6 per cent.; that he also had this understanding with Mr. McDonough (district attorney of the Kansas City Southern Railway Company). Mr. Morrell, local attorney for appellants, testified that the other commissioners were present at the time of his conversations with Mr. Perkins; at least the one where he said, "Of course, this settlement is based on 6 per cent. of the entire cost, and that will necessarily mean that there is no other reductions;" and that Mr. Perkins remarked, "Yes, this is the last day for filing objections."

It is apparent from the testimony that at the time these negotiations were going on Mr. Perkins was speaking apparently, not only for himself, but for all the other commissioners; and that it was the secret intention on his part at the very time of the negotiations that the whole assessment should be reduced on all property in the district, but he was careful not to impart this intention to representatives of the railway company until the time for appeal had expired, and then stated to Mr. Morrell, "Well, you didn't know that we put one over your railroad after all, did you?" And said, "Your railroad is worse off than they were to start with because you are going to have to pay more taxes."

The testimony as set forth in this record convinces that the commissioners, instead of eliminating the discrimination against appellants in the assessments as agreed to, deliberately perpetrated a fraud upon them resulting in an increased discrimination. It was not a mistake or inadvertence. It gives evidence of assumed but mistaken shrewdness.

Kerr on Fraud and Mistake, p. 42, defines "fraud" as follows: "Fraud, in the contemplation of a court of equity, may be said to include properly all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another; or by which an undue or unconscientious advantage is taken of another."

Appellees claim that any agreement that the assessments on the property of appellants and a few other property owners should be reduced, and that no reduction be made as to other property owners would be a fraud and not binding. However that may be, appellants' agreement to an assessment of $10,000 per mile was based upon their understanding at least that outside of where written objections were filed, the other assessments were fair and reasonable and would not arbitrarily be reduced without some notice to them. The commissioners knew, as the record shows, that such was the understanding of appellants.

The county judge testified that he knew of no agreement being made not to reduce assessments of other property owners where objections were not filed. He testifies he was advised of the amount agreed upon of $10,000 per mile to which the assessments of appellants should be reduced, and he told the representatives of appellants that such an order would be made, and it was made on July 29th, which was after the time for filing objections had expired. No evidence was taken on the question of the reduction of assessments as to properties where no written objections had been filed thereto.

Had the county judge any authority to make an order reducing the assessments when no objection had been filed in writing as provided by the statutes of Arkansas?

[5] The county court as established in many of the states is similar in its jurisdiction to boards of supervisors. It is created for special purposes, and it is the general holding of all the courts that its powers are limited to those conferred upon it by the Constitution or statutes of the state, and such as by necessary implication arise from grants of power from such sources. In Jennings v. Ft. S. Dist. of Sebastian Co., 115 Ark. 130, 139–140, 171 S. W. 920, 923, the court says: "It is well settled that the county court, under our Constitution, being created and given jurisdiction for special purposes, can only exercise such powers as are expressly conferred upon it by the Constitution and statutes, or those that arise

by necessary implication from the powers expressly granted." 11 Cyc. 390; State et al. v. True et al., 116 Tenn. 294, 95 S. W. 1028; County of Modoc v. Spencer, 103 Cal. 498, 37 P. 483; Stiewel v. Fencing Dist., 71 Ark. 17, 70 S. W. 308, 311, 71 S. W. 247; Massey v. A. & M. Highway Dist., 163 Ark. 63, 259 S. W. 387, 392; Road Imp. Dist. v. Crary, 151 Ark. 484, 237 S. W. 444.

We look in vain for any statute of Arkansas giving to the county court authority to change assessments, except where written objections have been filed thereto and hearings had thereon.

Section 5423, C. & M. Digest of the Statutes of Arkansas, 1921, provides for the assessors to certify their completed work and deliver it to the board of commissioners, who in turn file the same in the office of the county clerk, whose duty it is to give public notice by two consecutive insertions in a publication having a general circulation in said county, said notice to state the assessment of benefits and damages as filed in the office of the county commissioners, and notifying persons, firms, and corporations aggrieved by any assessment to appear before the county court on some date to be fixed by the court, "for the purpose of having any errors adjusted, or any wrongful or grievous assessment corrected, and all grievances or objections to said assessment shall be presented to said court in writing." The statute further provides, "The county court shall hear and determine the justness of any assessment of benefits or damages, and is hereby authorized to equalize, lower or raise any assessment upon a proper showing to the court."

Section 5425 provides: *"Who May Appeal.*—Any owner of real property within the district may appeal from the judgment fixing the assessment of benefits or damages within ten days by filing an affidavit for appeal and stating therein the special matter appealed from, but such appeal shall affect only the particular tract of land or other real property concerning which said appeal is taken, and on appeal only the special matters set up in said affidavit shall be considered by the circuit court. If no appeal is taken within that time, such judgment shall be deemed final, conclusive and binding upon all real property in the district, and the owners thereof, and said assessment of benefits shall not be subject to collateral attack. The board of commissioners on behalf of the district, or any owner of real property therein may likewise appeal from

any order of the county court refusing to enter such judgment, and said county court may be compelled by mandamus to enter such judgment. Id. § 14."

These statutes clearly point out that objections to assessments must be presented to the court in writing, and the county court is given power to equalize, lower or raise any assessments upon a proper showing at the hearing. The scheme of assessment is by assessors, errors to be corrected by the county court. It was apparently not the intention of the Legislature that the county court should be the assessing body.

In Commissioners of Road Imp. Dist. No. 2 of Lafayette County, Ark., v. St. Louis Southwestern Railway Co., 257 U. S. 547, 42 S. Ct. 250, 66 L. Ed. 364, it is held that such proceedings as those under consideration were adversary proceedings, the road district being the plaintiff, and the property owner the defendant, and that the county court in hearing such controversy was a judicial tribunal from the time the commissioners filed the book of assessments in its clerk's office and asked for its confirmation, thus further substantiating the contention that the only question before the county court was the correctness of the assessments as to which written objections had been filed.

Sections 5429 and 5430, C. & M. Digest, provide for reassessments by the assessors.

[6] The county court had no authority here to reduce assessments where no objections were filed in writing and no hearing had, and to practically make a new assessment. Doing so resulted in an increase of the discrimination against appellants, and while the action of the county court was doubtless not intended to accomplish the result which it did, yet its void action, together with the action of the commissioners, resulted in a legal fraud upon appellants.

In our opinion the undisputed testimony shows that fraud was perpetrated upon appellants by the commissioners of the district. Therefore appellants are not bound by the alleged compromise and agreement and are entitled to attack the assessment against them unless barred by laches. Stiewel v. Fencing Board of Dist. No. 6, 71 Ark. 17, 70 S. W. 308, 71 S. W. 247; Radcliffe v. Scruggs, 46 Ark. 96.

[7] It is the peculiar province of equity to relieve against every species of fraud. Parties should not be permitted to obtain an unjust advantage over others by trickery. As said in Kerr on Fraud and Mistake, p. 44: "If a case of fraud be established, a court of equity will set aside all transactions founded upon it by whatever machinery they may have been effected, and notwithstanding any contrivance by which it may have been attempted to protect them. It is immaterial whether such machinery and contrivance consisted of a decree in equity and a purchase under it, or of a judgment at law, or of other transactions between the actors in the fraud."

[8] III. Appellees claim there can be no recourse to equity because there was a complete remedy by appeal. Section 5425, C. & M. Digest of the Statutes of Arkansas of 1921, provides for an appeal from the final assessment of benefits. Appellees refer to the recent case of First National Bank of Greeley v. Board of Commissioners of Weld County, Colorado, 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784. Whether the doctrine announced there, as to the necessity of exhausting remedies before administrative boards before resorting to a judicial tribunal to assert the invalidity of a tax, is applicable to the situation here, we need not determine. If applicable, appellees are in no position to urge it. Further, in that case and in Milheim v. Moffat Tunnel Improvement District, 262 U. S. 710, 43 S. Ct. 694, 67 L. Ed. 1219, the parties made no objection to the assessment until the time for action had gone by. The situation here is entirely different. Written objections to the assessment of benefits were filed by appellants, as provided by the statutes. A compromise was agreed upon, which compromise apparently was not in good faith on the part of the commissioners, and appellants were lulled into false security as to their position by the fraud of the commissioners, which was not known to them until the time for appeal had expired. Thus the claimed adequate remedy by appeal was lost to appellants through the sharp practice of the commissioners, and under such circumstances they are not in position to question the equitable action on the ground that appellants had a complete remedy by appeal from the final confirmation of the assessment.

IV. It is suggested by appellees that if fraud were perpetrated on appellants, as claimed, the laws of Arkansas furnish ample remedy for setting the same aside by motion under section 6290, C. & M. Digest, subdivision 4, providing: "Fourth. For fraud practiced by the successful party in the obtaining of the judgment or order."

Section 6285, which with section 6290 constitutes a part of title 8 of C. & M. Digest,

Laws of Arkansas, provides in general that a judgment rendered, or final order made in the circuit court, may be reversed, etc.

Section 6290, hereinbefore referred to, also a part of title 8, relates to amendment, correction, or review of judgments. It is very doubtful if section 6290, in view of the statement in section 6285, refers to any court except the circuit court.

[9] In Rust v. Kocourek, 130 Ark. 39, 196 S. W. 938, the court referring to the premature entry of a judgment in an adversary proceeding, being declared by the statute to be a clerical misprision, which is set forth in section 6290 as a ground for vacating or modifying a judgment, holds that the statute does not apply to special proceedings of the county court for the establishment of public roads. This decision would raise further doubt as to whether section 6290 would apply to special proceedings of the county court with reference to the establishment of public roads. The matter is most doubtful and would not constitute such plain, certain, and adequate remedy at law as to preclude resort by appellants to a court of equity where the assessment made against their property was so palpably discriminatory as to deny the equal protection of the law, and where the question of fraud was involved. In Corney v. Corney, 108 Ark. 415, 159 S. W. 20, it is held that in the absence of a statute giving a complete remedy at law, a court of equity is the proper forum for granting relief against fraud in the procurement of judgments.

V. Are appellants barred by laches from claiming relief in equity?

[10] Where fraud is involved laches will not commence to run as to a party affected thereby until he has knowledge of the fraud. "Laches cannot exist unless and until party has legal knowledge of the facts affecting his rights." McWilliams v. Excelsior Coal Co. (C. C. A.) 298 F. 884; Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 36 L. Ed. 738; Layton Pure Food Co. v. Church & Dwight Co., 182 F. 35, 104 C. C. A. 475, 32 L. R. A. (N. S.) 274.

[11] Laches is not governed by state statutes of limitation, nor is it dependent upon mere lapse of time. It is in the nature of estoppel. Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 36 L. Ed. 738; Mason v. MacFadden (C. C. A.) 298 F. 384; Layton Pure Food Co. v. Church & Dwight Co., 182 F. 35, 104 C. C. A. 475, 32 L. R. A. (N. S.) 274; Brun et al. v. Mann, 151 F. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.)

154; Pond Creek Coal Co. v. Hatfield et al., 239 F. 622, 152 C. C. A. 456; Drees v. Waldron, 212 F. 93, 128 C. C. A. 609.

The applicability of the doctrine depends upon the circumstances of each particular case. Abraham v. Ordway, 158 U. S. 416, 15 S. Ct. 894, 39 L. Ed. 1036; Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 36 L. Ed. 738; Jackson v. Jackson et al., 175 F. 710, 99 C. C. A. 286; Taylor v. Salt Creek Consol. Oil Co. et al. (C. C. A.) 285 F. 532; Mason v. MacFadden (C. C. A.) 298 F. 384.

[12] Laches is to promote not to defeat, justice. Brun et al. v. Mann, 151 F. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154.

In Patterson v. Hewitt, 195 U. S. 309, 319, 25 S. Ct. 35, 37, 49 L. Ed. 214, the court said: "Indeed, in some cases the diligence required is measured by months rather than by years. * * * And in others a delay of two, three or four years has been held fatal." While in Southern Pacific Co. v. Bogert, 250 U. S. 483, 490, 39 S. Ct. 533, 536, 63 L. Ed. 1099, the parties were held not to be estopped by laches though they had pursued the wrong remedy for a period of over 22 years, the court saying: "Nor does failure, long continued, to discover the appropriate remedy, though well known, establish laches where there has been due diligence and, as the lower courts have here found, the defendant was not prejudiced by the delay."

This court is thoroughly committed to the doctrine "that mere lapse of time never constitutes laches, but in addition the court must find that it would be inequitable to grant the relief prayed for." Mason v. MacFadden (C. C. A.) 298 F. 384; Minnesota Mut. Inv. Co. v. McGirr et al. (C. C. A.) 263 F. 847; Drees v. Waldron, 212 F. 93, 128 C. C. A. 609.

In Board of Directors of Miller Levee Dist. No. 2 v. Prairie Pipe Line Co. (C. C. A.) 292 F. 474, 480, this court said: "The contention by plaintiff that defendant is estopped to question the validity of the assessment cannot avail, first, because no estoppel is pleaded * * * and, second, because the record fails to show any evidence of acts or conduct on the part of the defendant upon which plaintiff has relied to its detriment."

In Mason v. MacFadden (C. C. A.) 298 F. 384, 391, we said: "The test is not time, but whether the situation of the parties is so changed as to render prosecution of a suit inequitable, and this test has been

adopted by the courts in the majority of cases dealing with the subject."

In Drees v. Waldron, 212 F. 93, 95, 128 C. C. A. 609, 611, this court said: "The doctrine of laches protects against a proceeding instituted or prosecuted without diligence and where the delay and thus the fault of one party results in an unfair advantage over his adversary. The existence of laches is primarily determined not by lapse of time but by considerations of justice."

Applying the test of the cases heretofore decided in this court, is it inequitable to grant appellants the relief demanded, because of the period of time that has elapsed since the discovery of the fraud complained of and the bringing of suit?

A careful survey of the record leads inevitably to the conclusion that the local attorney for appellants knew of the fraud in the fall, or at least in the winter of 1915 and 1916, and that his information was communicated to appellants' district attorney, Mr. McDonough. This was after the time of appeal in the state court had expired, but before appellants had paid any installment of the special taxes assessed for benefits, the first of which was paid in April, 1916. Mr. McDonough testifies that he did not have full notice of all the facts of the alleged fraud until shortly before the suit was brought. But we think the fact must be squarely faced that appellants had such notice of the alleged fraud as to put them thoroughly on inquiry in the late fall of 1915, or the winter of 1915 and 1916, and that with such knowledge they paid six of the yearly installments of taxes, and did not commence suit until 1923. What is the excuse for this delay in bringing suit? Mr. McDonough testifies that after he received a letter from the Kansas City Southern Railway Company's general solicitor in 1916 as to these assessments, he advised the appellants that in his view of the Alexander Act there could be a reassessment, and recommended against litigation in the expectation of taking the matter up with the board and getting a correction of the assessment; that he knew the matter was taken up by the proper officials of the railroads; that he had seen in one of their files the original letter from Dr. Wood, one of the board of commissioners, in which he intimated that appellants would be given a hearing on the question. He also testifies that he came to Ashdown and discussed the matter with Dr. Wood; that he talked with him, because he was better acquainted with him than with

2 F.(2d)—44

the other members of the board. He testifies that Dr. Wood promised a hearing by the board of commissioners on the question of a reassessment of benefits, and that he endeavored during 1917, 1918, and 1919 to get such hearing; that in 1921 he wrote a letter to Dr. Wood which was in testimony, in which he asked for a reassessment of the property of appellants. To this letter he received no reply, and on April 5, 1921, he wrote to Mr. Russell, a member of the board, with relation to the matter; that he received a letter from Mr. Russell advising that they would try and remember to notify him of the time of holding the meeting (this letter was immediately before taxpaying time); that on April 13, 1921, which was after taxpaying time, Mr. Russell wrote him as follows:

"Hon. James B. McDonough, Fort Smith, Arkansas—Dear Sir: With reference to your letter of the 5th, will say that the date has not been set for the meeting, but will let you know what date we will meet. As to the reassessment of benefits we do not so see it that the law requires us to make a reassessment at our next meeting. Therefore, we are not anticipating any change in the benefits. Yours truly, A. J. Russell, Secretary, Road Improvement District No. 1, Little River County, Arkansas."

That this was the first information he had that a reassessment would not be made, and that soon thereafter this suit was started. Installments of taxes were paid in 1916, 1917, 1918, 1919, 1920, 1921, and 1922, and appellants refused to pay the 1923 installment. If this delay in bringing action resulted in prejudice to parties entitled to complain, then we think the doctrine of laches should apply.

[13] Who is prejudiced? As to whom would it be inequitable to permit an equity action such as this to be maintained? Certainly the commissioners cannot complain. The district has suffered no prejudice. The commissioners were not in doubt as to appellants' attitude regarding the assessment. Protests were made to the attorney for the district as soon as the local attorney for appellants knew of the fraud, and attempts were made to secure a reassessment.

Further, the commissioners of the road district are not in position to urge laches on the part of appellants, as the right of appeal under the state statute was lost to appellants by the fraud of the commissioners, and the expected, if not promised, reassessment was apparently relied on by appellants until the receipt of the letter heretofore set

forth showing that no assessment would be made.

[14, 15] Are the bondholders in position to complain and assert as against appellants the doctrine of laches? How are they prejudiced by the delay? They have no interest in what property may pay the assessment of benefits. Their interest is that sufficient sums be raised by assessment to secure and protect them on the bond issues. The bonds were purchased by them subject to the provisions of the Arkansas statute with reference to reassessment. There is no question, we think, that under such statutes a reassessment of benefits can be made, and that it would be the duty of the officials charged therewith so to do. If this power to make a reassessment by the commissioners of the road district exists, then the bondholders have nothing to complain of. It is to be assumed that public officials will do their duty, and if they refuse so to do they could be compelled by a court to act.

In Hamilton on Law of Special Assessments, § 736, it is laid down that delay in proceeding against a void tax will not constitute laches and be a bar to relief where there are provisions for a reassessment. We quote from said section: "* * * Mere delay in proceeding against a void tax will not constitute laches, especially where the record fails to show affirmatively that the plaintiff had notice of the levy complained of, or where the statute gives him the right to wait until proceedings to foreclose the lien are begun. It is not a bar to relief where there are provisions for a reassessment, although the court has power to deny relief on the ground of laches, without passing on any other question."

In Frevert v. Mayor, etc. of City of Bayonne, 63 N. J. Law, 202, 207, 42 A. 773, 774, the question of laches was urged as a bar to relief from assessment for a public improvement. The court said: "While unreasonable delay will ordinarily induce this court to refuse its prerogative writ to review an assessment for defects in procedure or alleged excessiveness, and perhaps should always have that effect, where there is no way of subjecting the lands affected to a proper share of the public burden, there seems to be no good reason for denying just relief where there is a power of reassessment, as there is in the case now before us."

In State, Graham, Pros., v. Mayor, etc., of Paterson, 37 N. J. Law, 380, 384, the court said: "In the exercise of its discretionary power, this court limited the effect of the writ in this case to the assessment,

on the ground that property owners are estopped from calling in question the legality of proceedings under which, with notice to them, work has been done and expense incurred by the public authorities for their benefit, without any objection on their part, until the improvement is completed. If, in such case, the ordinance under which the work is directed to proceed is set aside, the entire expense must fall on the general tax levy. But the reason for this rule, which should be vigorously applied, does not extend to assessments where provision is made as in this case for a reassessment."

Sections 5429 and 5430, C. & M. Digest of the Statutes of Arkansas 1921, provide for reassessments. Section 5429 would not be applicable here. Section 5430 is as follows: "The board of commissioners may not oftener than once a year order a reassessment of the benefits, which shall be made, advertised, revised and confirmed as in the case of the original assessment and with like effect; but if the district shall have issued interest-bearing evidence of the debt, the total amount of the assessed benefits shall never be diminished."

The statute is considered in Road Improvement Dist. No. 3 v. Morris, 153 Ark. 635, 241 S. W. 389, and also in Earle Road Improvement Dist. v. Johnson, 145 Ark. 438, 224 S. W. 965. In Road Improvement Dist. No. 3 v. Morris, supra, the court found that plaintiffs had stated a case entitling them to a reassessment of betterments, and on page 391 said: "As contractual rights of third parties have intervened, this reassessment must be made in a manner to leave those rights undisturbed."

It is clear from these Arkansas decisions that the board of commissioners under the statutes of Arkansas has power to order a general reassessment of benefits, subject to "the restriction that the total amount of benefits should not be diminished below the amount of the obligations of the district." Earle Road Imp. Dist. v. Johnson, 145 Ark. 438, 224 S. W. 965.

The reduction in the assessment of benefits against the property as to which no written objections were filed being unauthorized and void, there would seem to be little difficulty in assessing benefits equal to the assessment in force at the time of the issuance of the bonds. We do not see that the bondholders are prejudiced or will suffer any detriment, or are affected in any way by this holding. The only prejudiced parties here apparently are appellants who

have paid exorbitant assessments while endeavoring to secure a reassessment.

The question as to whether the lower court should have ordered the commissioners of the road district to make a reassessment is not before us. It was not raised in the trial court. No such relief was asked. If the commissioners perform their duty as the law provides as to reassessment we assume the question will not arise. Therefore we deem it unnecessary to discuss it further than to say that a reassessment should of necessity take into consideration that appellants have, for six years, paid an excessive proportion of the taxes assessed for the improvement.

We conclude that the trial court erred in its conclusion and that the relief asked by appellants should have been granted. The judgment is reversed, and the case remanded, with directions to enter a decree for appellants enjoining, as prayed in their bill of complaint, the collection of the unpaid portion of the taxes and assessments complained of.

Reversed.